Andrea W. Jeffries, Bar No. 183408
ajeffries@jonesday.com
Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071.2452
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

Attorney for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **The Procter & Gamble Co.,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**Dr. Squatch, LLC,**<br><br>　　　　**Defendant.** | Case No. **2:24-cv-4711**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY DEMANDED** |

Plaintiff The Procter & Gamble Company ("P&G") files this Complaint for patent infringement against Dr. Squatch, LLC ("Dr. Squatch") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq.*, in particular 35 U.S.C. § 271, arising out of Dr. Squatch's manufacture, use, sale, offer for sale, and/or importation of its aluminum-free deodorant stick products, including Sticc of the Dead, Wood Barrel Bourbon, Coconut Castaway, Fresh Falls, Pine Tar, Birchwood Breeze, Alpine Sage, Bay Rum, Rainforest Rapids, Pine Tar, Cool Fresh Aloe, and Summer Citrus (collectively, the "Accused Products") prior to the expiration of U.S. Patent Nos.

11,844,752; 11,497,706; 11,540,999; 10,905,647; and 10,966,915 (collectively, the "Asserted Patents").

## THE PARTIES

2. Plaintiff P&G is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, OH 44502. P&G is the owner of the Asserted Patents. P&G is a leading consumer products company that makes and sells many different types of consumer products, including but not limited to deodorant products and aluminum-free deodorant stick products.

3. Upon information and belief, Defendant Dr. Squatch, LLC is a corporation organized and existing under the laws of Delaware, with its principal place of business at 4065 Glencoe Ave. #300b, Marina Del Rey, California 90292.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action under 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a) because P&G asserts patent infringement claims.

5. This Court has personal jurisdiction over Dr. Squatch, LLC because it is a corporation with its principal place of business in the State of California.

6. Upon information and belief, Dr. Squatch has manufactured, used, sold, offered for sale, and/or imported, and will continue to manufacture, use, sell, offer for sale, and/or import, the Accused Product throughout the United States, including the State of California, and has derived and will derive substantial revenue therefrom.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Dr. Squatch resides in this judicial district.

## THE ASSERTED PATENTS

8. U.S. Patent No. 11,844,752 (the "'752 Patent") is entitled "Deodorant Compositions." The United States Patent and Trademark Office ("USPTO") issued

the '752 Patent on Dec. 19, 2023. P&G is the owner of the '752 Patent. A true and correct copy of the '752 Patent is attached hereto as Exhibit 1.

9. U.S. Patent No. 11,540,999 (the "'999 Patent") is entitled "Deodorant Compositions." The USPTO issued the '999 Patent on January 3, 2023. P&G is the owner of the '999 Patent. A true and correct copy of the '999 Patent is attached hereto as Exhibit 2.

10. U.S. Patent No. 11,497,706 (the "'706 Patent") is entitled, "Antiperspirant and Deodorant Compositions." The USPTO issued the '706 Patent on November 15, 2022. P&G is the owner of the '706 Patent. A true and correct copy of the '706 Patent is attached hereto as Exhibit 3.

11. U.S. Patent No. 10,905,647 (the "'647 Patent") is entitled "Antiperspirant and Deodorant Compositions." The USPTO issued the '647 Patent on February 2, 2021. P&G is the owner of the '647 Patent. A true and correct copy of the '647 Patent is attached hereto as Exhibit 4.

12. U.S. Patent No. 10,966,915 (the "'915 Patent") is entitled "Deodorant Compositions." The USPTO issued the '915 Patent on April 6, 2021. P&G is the owner of the '915 Patent. A true and correct copy of the '915 Patent is attached hereto as Exhibit 5.

13. The claims of the Asserted Patents are valid and enforceable.

## THE ACCUSED PRODUCTS

14. The Accused Products are deodorant sticks.

15. Each of the Accused Products satisfies all of the elements of at least one claim of each of the Asserted Patents.

16. A representative formula list, specifically of Dr. Squatch's Fresh Falls deodorant product, is shown below in Figure 1.

**FRESH FALLS DEODORANT**

Caprylic/Capric Triglyceride, Manihot Esculenta (Arrowroot) Powder, Stearyl Alcohol, Magnesium Hydroxide, Beeswax, Butyrospermum Parkii (Shea) Butter, Cocos Nucifera (Coconut) Oil, Triethyl Citrate, Simmondsia Chinensis (Jojoba) Seed Oil, Natural Fragrance, Jojoba Esters, Charcoal Powder, Helianthus Annuus (Sunflower) Seed Oil, Tocopherol, Lactobacillus Ferment, Maltodextrin

To learn more, visit our Ingredient Glossary.

**Figure 1**: Fresh Falls deodorant ingredient list. *See* Ex. 6 at 1.

17. As shown in Figure 1, the Accused Products comprise triglycerides.

18. As shown in Figure 1, the Accused Products comprise a structurant, e.g., stearyl alcohol.

19. As shown in Figure 1, the Accused Products comprise an antimicrobial, e.g., magnesium hydroxide.

20. The Accused Products are anhydrous, as shown, e.g., by the lack of "water" as a listed ingredient in Figure 1.

21. Dr. Squatch advertises the Accused Products as aluminum free, as shown below in Figure 2.



**Figure 2**: Fresh Falls deodorant packaging. *See* Ex. 7 at 1.

22. Dr. Squatch also advertises the Accused Products as being silicone free, as shown below in Figure 3.

> - ALUMINUM-FREE, NO HARMFUL INGREDIENTS - Our products are 98-100% natural in origin and we never use harsh chemicals or synthetics like aluminum, parabens, sulfates, phthalates, or silicones.

**Figure 3**: Fresh Falls and Alpine Sage product description from Amazon.com. *See* Ex. 8 at 1.

## DR. SQUATCH'S INFRINGING ACTIVITY

***The '752 Patent***

23. Based on the foregoing in paragraphs 1 to 22, it is apparent that the Accused Products directly infringe at least claim 1 of the '752 Patent, which reads as follows:

> 1. A deodorant stick comprising:
>    a. at least one antimicrobial; and
>    b. a structurant that is stearyl alcohol; said stick being
>       free of an aluminum salt; and

    said stick having a hardness from about 80 mm*10
    to about 140 m*10, as measured by penetration with
    ASTM D-1321 needle;
     wherein the deodorant stick is anhydrous and is
     substantially free of silicones.

24. The Accused Products are deodorant sticks.

25. The Accused Products comprise at least one antimicrobial.

26. The Accused Products comprise a structurant that is stearyl alcohol.

27. The Accused Products are free of an aluminum salt.

28. The Accused Products have a hardness from about 80 mm*10 to about 140 mm*10, as measured by penetration with ASTM D-1321 needle.

29. The Accused Products are anhydrous.

30. The Accused Products are substantially free of silicones.

31. P&G has virtually marked and continues to virtually mark the '752 Patent at https://www.pg.com/patents/brands/, pursuant to 35 U.S.C. § 287(a).

**The '999 Patent**

32. The Accused Products also directly infringe at least claim 1 of the '999 Patent, which reads:

  1. A deodorant stick comprising:
   a. at least one antimicrobial comprising magnesium hydroxide; and
   b. a primary structurant with a melting point of at least about 50° C.; and
   said stick being free of an aluminum salt; and
   said stick having a hardness from about 80 mm*10 to about 140 mm*10, as measured by penetration with ASTM D-1321 needle.

33. The Accused Products are deodorant sticks.

34. The Accused Products comprise at least one antimicrobial comprising magnesium hydroxide.

35. The Accused Products comprise a primary structurant with a melting point of at least about 50° Celsius.

36. The Accused Products are free of an aluminum salt.

37. The Accused Products have a hardness from about 80 mm*10 to about 140 mm*10, as measured by penetration with ASTM D-1321 needle.

38. P&G has virtually marked and continues to virtually mark the '999 Patent at https://www.pg.com/patents/brands/, pursuant to 35 U.S.C. § 287(a).

**The '706 Patent**

39. The Accused Products also directly infringe at least claim 1 of the '706 Patent, which reads:

> 1. A deodorant stick, comprising:
>> at least about 25% by weight liquid triglyceride and
>> a primary antimicrobial;
>> said deodorant stick being free of an aluminum salt.

40. The Accused Products are deodorant sticks.

41. The Accused Products comprise at least about 25% by weight liquid triglyceride.

42. The Accused Products comprise a primary antimicrobial.

43. The Accused Products are free of an aluminum salt.

44. P&G has virtually marked and continues to virtually mark the '706 Patent at https://www.pg.com/patents/brands/, pursuant to 35 U.S.C. § 287(a).

**The '647 Patent**

45. The Accused Products also directly infringe at least claim 1 of the '647 Patent, which reads:

> 1. A deodorant stick comprising:
>> a. at least 25% by weight liquid triglyceride;

    b. a primary antimicrobial having a water solubility of at most about 90 g/L at 25°C.;

    c. a fragrance composition comprising at least about 50% by weight of natural oils, essential oils, or a combination thereof; and

    d. a primary structurant with a melting point of at least 50° C.;

    said stick being free of an aluminum salt; and

    said deodorant stick having a hardness from about 70 mm*10 to about 140 mm*10, as measured by penetration with ASTM D-1321 needle.

46. The Accused Products are deodorant sticks.

47. The Accused products comprise at least 25% by weight liquid triglyceride.

48. The Accused Products comprise a primary antimicrobial having a water solubility of at most about 90 g/L at 25° Celsius.

49. The Accused Products comprise a fragrance composition comprising at least about 50% by weight of natural oils, essential oils, or a combination thereof.

50. The Accused Products comprise a primary structurant with a melting point of at least 50° Celsius.

51. The Accused Products are free of an aluminum salt.

52. The Accused Products have a hardness from about 70 mm*10 to about 140 mm*10, as measured by penetration with ASTM D-1321 needle.

53. P&G has virtually marked and continues to virtually mark the '647 Patent at https://www.pg.com/patents/brands/, pursuant to 35 U.S.C. § 287(a).

***The '915 Patent***

54. The Accused Products also directly infringe at least claim 1 of the '915 Patent, which reads:

> 1. A deodorant stick comprising:
>    a. at least about 25% of a liquid triglyceride;
>    b. at least one antimicrobial; and
>    c. a primary structurant with a melting point of at least about 50° Celsius; and wherein said stick is free of an aluminum salt.

55. The Accused Products are deodorant sticks.

56. The Accused Products comprise at least about 25% of a liquid triglyceride.

57. The Accused Products comprise at least one antimicrobial.

58. The Accused Products comprise a primary structurant with a melting point at least about 50° Celsius.

59. The Accused Products are free of an aluminum salt.

60. P&G has virtually marked and continues to virtually mark the '915 Patent at https://www.pg.com/patents/brands/, pursuant to 35 U.S.C. § 287(a).

**DR. SQUATCH'S KNOWLEDGE OF THE ASSERTED PATENTS**

61. Dr. Squatch has had actual knowledge of the Asserted Patents at least since November 1, 2022. On that date, P&G sent a letter to Mr. Jack Haldrup, CEO of Dr. Squatch, informing Dr. Squatch of its infringement of the '915, '647, and '706 Patents. Subsequently, on October 3, 2023, P&G sent an email notifying Dr. Squatch of its infringement of the '999 Patent. On December 21, 2023, P&G sent an email notifying Dr. Squatch of its infringement of the '752 Patent.

# COUNT ONE

## INFRINGEMENT OF U.S. PATENT NO. 11,884,752

62. P&G realleges, adopts, and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

63. The '752 Patent is currently in force and presumed valid.

64. Dr. Squatch manufactures, uses, offers for sale, sells, markets, and/or distributes the Accused Products.

65. Such manufacture, use, sale, offer for sale, and/or importation directly infringes, induces others to infringe, and contributes to the infringement by others of each and every limitation of at least one claim of the '752 Patent under 35 U.S.C. § 271(a), (b), and (c) in this Judicial District and elsewhere.

66. P&G has been and continues to be damaged by Dr. Squatch's infringement of the '752 Patent.

67. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from directly infringing, inducing infringement, and/or contributing to infringement of the '752 Patent.

68. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

69. Dr. Squatch's infringement of the '752 Patent has been with actual knowledge as of at least December 21, 2023 when P&G informed Dr. Squatch of its infringement by email.

70. Dr. Squatch's infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

71. Dr. Squatch's infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys' fees and costs under 35 U.S.C. § 285.

72. In the alternative, and upon information and belief, Dr. Squatch is vicariously liable under § 271(a) for direct infringement by exercising control or direction over at least one contract manufacturer pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

73. Upon information and belief, the at least one contract manufacturer acts at the direction, under the control, and for the benefit of Dr. Squatch with respect to the making or use of the Accused Products.

74. Upon information and belief, Dr. Squatch has an agreement with at least one contract manufacturer to make the Accused Products, such that the contract manufacturer's making of the Accused Products literally infringes at least one claim of the '752 Patent.

75. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of at least one claim of the '752 Patent by the manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 11,540,999

76. P&G realleges, adopts, and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

77. The '999 Patent is currently in force and presumed valid.

78. Dr. Squatch manufactures, uses, offers for sale, sells, markets, and/or distributes the Accused Products.

79. Such manufacture, use, sale, offer for sale, and/or importation directly infringes, induces others to infringe, and contributes to the infringement by others of

each and every limitation of at least one claim of the ’999 Patent under 35 U.S.C. § 271(a), (b), and (c) in this Judicial District and elsewhere.

80. P&G has been and continues to be damaged by Dr. Squatch’s infringement of the ’999 Patent.

81. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from directly infringing, inducing infringement, and/or contributing to infringement of the ’999 Patent.

82. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

83. Dr. Squatch’s infringement of the ’999 Patent has been with actual knowledge as of at least October 3, 2023, when P&G informed Dr. Squatch of its infringement by email.

84. Dr. Squatch’s infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

85. Dr. Squatch’s infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys’ fees and costs under 35 U.S.C. § 285.

86. P&G has been and continues to be damaged by Dr. Squatch’s infringement of the ’999 Patent.

87. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from directly infringing, inducing infringement, and/or contributing to infringement of the ’999 Patent.

88. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

89. Dr. Squatch's infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

90. Dr. Squatch's infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys' fees and costs under 35 U.S.C. § 285.

91. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of each and every limitation of at least one claim of the '999 Patent by manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

92. In the alternative, and upon information and belief, Dr. Squatch is vicariously liable under § 271(a) for direct infringement by exercising control or direction over at least one contract manufacturer pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

93. Upon information and belief, the at least one contract manufacturer acts at the direction, under the control, and for the benefit of Dr. Squatch with respect to the making or use of the Accused Products.

94. Upon information and belief, Dr. Squatch has an agreement with at least one contract manufacturer to make the Accused Products, such that the contract manufacturer's making of the Accused Products literally infringes at least one claim of the '999 Patent.

95. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of each and every limitation of at least one claim of the '999 Patent by the manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

# COUNT THREE

## INFRINGEMENT OF U.S. PATENT NO. 11,497,706

96. P&G realleges, adopts, and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

97. The '706 Patent is currently in force and presumed valid.

98. Dr. Squatch manufactures, uses, offers for sale, sells, markets, and/or distributes the Accused Products.

99. Such manufacture, use, sale, offer for sale, and/or importation directly infringes, induces others to infringe, and contributes to the infringement by others of each and every claim of at least one limitation of the '706 Patent under 35 U.S.C. § 271(a), (b), and (c) in this Judicial District and elsewhere.

100. P&G has been and continues to be damaged by Dr. Squatch's infringement of the '706 Patent.

101. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from directly infringing, inducing infringement, and/or contributing to infringement of the '706 Patent.

102. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

103. Dr. Squatch's infringement of the '706 Patent has been with actual knowledge as of at least November 1, 2022, when P&G informed Dr. Squatch of its infringement by letter to Mr. Jack Haldrup, CEO of Dr. Squatch.

104. Dr. Squatch's infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

105. Dr. Squatch's infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys' fees and costs under 35 U.S.C. § 285.

106. In the alternative, and upon information and belief, Dr. Squatch is vicariously liable under § 271(a) for direct infringement by exercising control or direction over at least one contract manufacturer pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

107. Upon information and belief, the at least one contract manufacturer acts at the direction, under the control, and for the benefit of Dr. Squatch with respect to the making or use of the Accused Products.

108. Upon information and belief, Dr. Squatch has an agreement with at least one contract manufacturer to make the Accused Products, such that the contract manufacturer's making of the Accused Products literally infringes at least one claim of the '706 Patent.

109. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of each and every limitation of at least one claim of the '706 Patent by the manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

## COUNT FOUR
## INFRINGEMENT OF U.S. PATENT NO. 10,905,647

110. P&G realleges, adopts, and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

111. The '647 Patent is currently in force and presumed valid.

112. P&G has been and continues to be damaged by Dr. Squatch's infringement of the '647 Patent.

113. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from

COMPLAINT FOR PATENT INFRINGEMENT

directly infringing, inducing infringement, and/or contributing to infringement of the '647 Patent.

114. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

115. Dr. Squatch's infringement of the '647 Patent has been with actual knowledge as of at least November 1, 2022, when P&G informed Dr. Squatch of its infringement by letter to Mr. Jack Haldrup, CEO of Dr. Squatch.

116. Dr. Squatch's infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

117. Dr. Squatch's infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys' fees and costs under 35 U.S.C. § 285.

118. In the alternative, and upon information and belief, Dr. Squatch is vicariously liable under § 271(a) for direct infringement by exercising control or direction over at least one contract manufacturer pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

119. Upon information and belief, the at least one contract manufacturer acts at the direction, under the control, and for the benefit of Dr. Squatch with respect to the making or use of the Accused Products.

120. Upon information and belief, Dr. Squatch has an agreement with at least one contract manufacturer to make the Accused Products, such that the contract manufacturer's making of the Accused Products literally infringes at least one claim of the '647 Patent.

121. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of each and every limitation of at least one claim of the '647 Patent by the manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

COMPLAINT FOR PATENT INFRINGEMENT

# COUNT FIVE

## INFRINGEMENT OF U.S. PATENT NO. 10,966,915

122. P&G realleges, adopts, and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

123. The USPTO thoroughly examined the '915 Patent. It is currently in force and presumed valid.

124. P&G has been and continues to be damaged by Dr. Squatch's infringement of the '915 Patent.

125. P&G has suffered and continues to suffer irreparable harm with no adequate remedy at law unless this Court enjoins Dr. Squatch and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from directly infringing, inducing infringement, and/or contributing to infringement of the '915 Patent.

126. The balance of hardships favors an injunction, and such injunction would not disserve the public interest.

127. Dr. Squatch's infringement of the '915 Patent has been with actual knowledge as of at least November 1, 2022, when P&G informed Dr. Squatch of its infringement by letter to Mr. Jack Haldrup, CEO of Dr. Squatch.

128. Dr. Squatch's infringement has been and continues to be deliberate, willful, and unlicensed, permitting P&G to seek enhanced damages under 35 U.S.C. § 284.

129. Dr. Squatch's infringement has been and continue to be deliberate, willful, and unlicensed, permitting P&G to seek attorneys' fees and costs under 35 U.S.C. § 285.

130. In the alternative, and upon information and belief, Dr. Squatch is vicariously liable under § 271(a) for direct infringement by exercising control or direction over at least one contract manufacturer pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

131. Upon information and belief, the at least one contract manufacturer acts at the direction, under the control, and for the benefit of Dr. Squatch with respect to the making or use of the Accused Products.

132. Upon information and belief, Dr. Squatch has an agreement with at least one contract manufacturer to make the Accused Products, such that the contract manufacturer's making of the Accused Products literally infringes at least one claim of the '915 Patent.

133. Therefore, P&G seeks a judgment that Dr. Squatch directly infringes, induces infringement of, and contributes to infringement of each and every limitation of at least one claim of the '915 Patent by the manufacture, use, sale, offer for sale, and/or importation of the Accused Products.

## **PRAYER FOR RELIEF**

WHEREFORE, P&G prays for judgment against Dr. Squatch as follows:

a. Declaring that Dr. Squatch has infringed each and every limitation of one or more claims of the Asserted Patents, and that the manufacture, use, sale, offer for sale, and/or importation of the Accused Products infringes one or more claims of U.S. Patent Nos. 11,844,752; 11,497,706; 11,540,999; 10,905,647; and 10,966,915.

b. For an order permanently enjoining Dr. Squatch, its officers, agents, servants, and employees, and those in active concert or participation with any of the them, from infringing U.S. Patent Nos. 11,844,752; 11,497,706; 11,540,999; 10,905,647; and 10,966,915.

c. For an accounting of all damages sustained by P&G as a result of Dr. Squatch's infringing activities;

d. For actual damages together with prejudgment interest;

e. For an order declaring this to be an exceptional case under 35 U.S.C. § 285;

     f.    For an award of attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest; and

     g.    For such other and further relief as this Court deems just and proper.

Dated: June 5, 2024

JONES DAY

By: /s/ Andrea W. Jeffries
Andrea W. Jeffries, Bar No. 183408
ajeffries@jonesday.com
Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071.2452
Telephone:  +1.213.489.3939
Facsimile:  +1.213.243.2539
Attorney for Defendant